UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| VENTUREDYNE, LTD. d/b/a SCIENTIFIC DUST COLLECTORS, | ) ) ) | |
| Plaintiff/Counterclaim Defendant, | ) ) | |
| v. | ) ) | CAUSE NO: 2:14-CV-00351-RL |
| CARBONYX INC. d/b/a CARBONYX CARBON TECHNOLOGIES and UNITED STATES STEEL CORPORATION | ) ) ) ) ) | |
| Defendants/Counterclaimants/ Cross-Claimants. | ) ) | |

## OPINION AND ORDER

This matter is before the Court on "Plaintiff's Motion for Judgment on the Pleadings with Respect to Counterclaim of United States Steel Corporation," filed by Plaintiff/Counterclaim Defendant, Venturedyne, Ltd. d/b/a Scientific Dust Collectors ("SDC"), which was filed on February 9, 2016 (DE #39). For the reasons set forth below, the Motion (DE #39) is **GRANTED**. The Clerk is **ORDERED** to **DISMISS** United States Steel Corporation's counterclaim (contained in DE #8 at 16) **WITH PREJUDICE**.

## BACKGROUND

Defendant/Counterclaimant, United States Steel Corporation ("US Steel") contracted with Defendant/Cross-claimant, Carbonyx, Inc. d/b/a Carbonyx Carbon Technologies ("Carbonyx") to construct a Carbonyx Alloy Syntheses Plant ("CASP") at Gary Works. (Answ., DE #8, ¶ 4.) According to SDC, Carbonyx then contracted with SDC to supply certain dust collection systems, including baghouses, cyclones and related equipment (collectively, "Dust Collection Equipment") for the Plant project at Gary Works. (Compl. ¶ 6.)

1

SDC claims that Carbonyx failed to pay for equipment and services provided under the contract. (Compl. ¶ 19.) SDC in turn filed a mechanics lien on real estate owned by U.S. Steel. (DE #8, ¶ 34.) On August 15, 2014, SDC filed a complaint in Lake Superior Court in the State of Indiana naming Carbonyx and US Steel as Defendants. (DE #2.) On September 26, 2014, the matter was removed to this Court. (DE #1.) SDC's complaint alleges breach of contract against Carbonyx, and against US Steel it alleges unjust enrichment, foreclosure of the mechanic's lien, and to hold US Steel personally liable for the debt owed by Carbonyx. (Compl. at 8, 10, 11, 13.) On October 24, 2014, US Steel filed its Answer to complaint, along with a counterclaim against SDC to recover losses resulting from SDC's faulty equipment and a Crossclaim against Carbonyx for breach of contract. (DE #8.)

US Steel's counterclaim against SDC alleges in relevant part:

> 3. Some of the Dust Collection Equipment [that SDC delivered and installed at the Plant project at Gary Works] was defective, deficient, and/or unsuitable for the purposes for which it was designed and/or used.
>
> 4. U.S. Steel incurred expenses for labor and materials to repair, replace and modify the defective, deficient and/or unsuitable Dust Collection Equipment.
>
> 5. U.S. Steel suffered outages and production losses and damages as a direct result of the defective, deficient and/or unsuitable Dust Collection Equipment.

(DE #8 at 16.)

On February 9, 2016, SDC filed its Motion for Judgment on the Pleadings with Respect to Counterclaim of United States Steel Corporation, as well as the supporting memorandum. (DE ##39-40.) On March 11, 2016, US Steel filed its response in opposition. (DE #43.) On March 18, 2016, SDC filed its reply memorandum. (DE #44.) Because this matter has been fully briefed, the motion is ripe for adjudication.

**DISCUSSION**

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) "is reviewed under the same standard as a motion to dismiss under 12(b) . . . ." *Flenner v. Sheahan*, 107 F.3d 459, 461 (7th Cir. 1997); *see also R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150*, 335 F.3d 643, 647 (7th Cir. 2003). Where the plaintiff moves for judgment on the pleadings, "the motion should not be granted unless it appears beyond doubt that the non-moving party cannot prove facts sufficient to support his position." *Housing Auth. Risk Retention Group, Inc. v. Chicago Housing Auth.*, 378 F.3d 596, 600 (7th Cir. 2004) (quotation omitted). In ruling on a motion for judgment on the pleadings, the court must accept as true "all well-pleaded allegations" and view them in the light most favorable to the nonmoving party, as well as accept as true all reasonable inferences to be drawn from the allegations. *R.J. Corman*, 335 F.3d at 647; *see also Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). A court may rule on a judgment on the pleadings under Rule 12(c) based upon a review of the pleadings alone, which include the complaint, the answer, and any written instruments attached as exhibits. *See Northern Indiana Gun & Outdoor Shows, Inc., v. City of South Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998); *see also* Fed. R. Civ. P. 10 (c) (providing that written instruments attached as exhibits to a pleading are a part of the pleading for all purposes).

In support of the instant motion, SDC claims that US Steel's counterclaim is barred by the economic loss doctrine. US Steel responds that the economic loss doctrine does not bar its claim because: (1) US steel has suffered damages to "other property," that is- property other than the product or service itself; (2) there was no agreement on allocation of loss between US Steel and SDC; and (3) US Steel's counterclaim does not seek to circumvent contractual limitations. (DE #43 at 6-7.) SDC replies that: (1) US Steel has not plausibly alleged damage to "other property"

3

in satisfaction of the notice pleading standard; and (2) contractual privity is not a requirement of the economic loss doctrine. (DE #44 at 1-7.)

As a result, this Court must examine: (1) whether based on the pleadings alone, US Steel's counterclaim is barred by the economic loss rule; (2) whether US Steel has sufficiently alleged damage to "other property"; and (3) whether a lack of contractual privity is sufficient to avoid the economic loss bar. Each is discussed below.

### a. Economic Loss Rule

The economic loss "rule preclud[es] tort liability for purely economic loss- that is, pecuniary loss unaccompanied by any property damage or personal injury (other than damage to the product or service itself) . . . ." *Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 727 (Ind. 2010). This is because "[C]ontract law governs damage to the product or service itself and purely economic loss arising from the failure of the product or service to perform as expected." *Id.* at 728 (quoting *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 153 (Ind. 2005)). As the Supreme Court of Indiana has stated, "economic losses occur when there is no personal injury and no physical harm to other property." *Gunkel*, 822 N.E.2d at 153-54. "In sum, Indiana law under the Products Liability Act and under general negligence law is that damage from a defective product or service may be recoverable under a tort theory if the defect causes personal injury or damage to other property, but contract law governs damage to the product or service itself and purely economic loss arising from the failure of the product or service to perform as expected." *Id.* at 153.

"Economic loss has been defined by Indiana courts as 'the diminution in the value of a product and consequent loss of profits because the product is inferior in quality and does not work for the general purposes for which it was manufactured and sold.'" *Id.* at 154 (quoting *Reed v.*

4

*Central Soya Co., Inc.*, 621 N.E.2d 1069, 1074 (Ind. 1993)). "Economic loss includes such incidental and consequential losses as lost profits, rental expense and lost time." *Id*.

Turning to the present case, determining whether US Steel's counterclaim is barred by the economic loss rule requires a close examination of the language used by US Steel, in its pleadings alone, to describe the damages that it allegedly suffered.

US Steel's counterclaim states in relevant part:

> 4. U.S. Steel incurred expenses for labor and materials to repair, replace and modify the defective, deficient and/or unsuitable Dust Collection Equipment.
>
> 5. U.S. Steel suffered outages and production losses and damages as a direct result of the defective, deficient and/or unsuitable Dust Collection Equipment.

(DE #18 at 16.)

A straightforward application indicates that the damages alleged by US Steel- expenses incurred to repair, replace and modify the defective equipment as well as outages, production losses, and damages- are precisely the type of pecuniary, incidental, and consequential loss that both Indiana courts and federal courts applying Indiana law have deemed "economic loss." On its face, US Steel's counterclaim has alleged no personal injury or property damages other than the damage to the defective product itself and incidental and consequential losses as a result. Under the economic loss rule, the types of losses alleged by US Steel in its counterclaim seem to be precluded under tort liability and should be governed by contract law.

However, US Steel contends that the economic loss doctrine does not bar its claim because US Steel has sufficiently alleged in its pleadings that it has suffered damages to "other property", that is- property other than the defective product itself.

### b. "Other Property" Rule

5

Despite the economic loss rule, "damage from a defective product or service may be recoverable under a tort theory if the defect causes personal injury or damage to *other property*." *Indianapolis-Marion Cnty. Pub. Library*, 929 N.E.2d at 731 (emphasis added). This has become known as the "other property rule." *Id.*

Determining whether damages from a defective product are recoverable in tort under the other property rule first requires an understanding of the nature and extent of the defective product at issue. "Because the 'economic loss' doctrine permits tort recovery only for personal injury or damage to 'other property,' if property is damaged, it is necessary to identify the [defective] product at issue [to] define 'other' property." *Gunkel*, 822 N.E.2d at 154.

According to the Indiana Supreme Court, the defective "product" for purposes of applying the economic loss rule "is the product purchased by the plaintiff, not the product furnished by the defendant." *Indianapolis-Marion Cnty. Pub. Library,* 929 N.E.2d at 731 (citing *Gunkel*, 822 N.E.2d at 155). "Properties that are provided by [a defendant] in the same transaction as part of an integrated whole generally are treated as a single property for this purpose. *Id.* at 732 *(citing* Gergen Restatement Drafts ¶ 8 cmt. c(2).*)* "If a component is sold to the first user as part of the finished product, the consequences of its failure are fully within the rationale of the economic loss doctrine ... [and] therefore is not 'other property.'" *Gunkel,* 822 N.E.2d at 155.

In *Indianapolis-Marion County Public Library*, the library hired an architect to renovate and expand the Library's downtown Indianapolis facility, including the parking garage. *Indianapolis-Marion County Public Library*, 929 N.E.2d at 725. The architect then subcontracted with two other companies to perform architectural and engineering services for the downtown project. *Id*. The library never contracted directly with the subcontractors. *Id*. As the project progressed, the Library became aware of several construction and design defects on the parking

garage. *Id*. As a result, the Library sued the architect as well as the subcontractors, claiming that it suffered damages of $40 to $50 million related to curing the defect and its effects. *Id*. at 725-76. The Court held that "[a]ny damages alleged to have resulted from the Defendants' negligence were to the 'product' the Library purchased, not to 'other property.' The economic loss rule applies." *Id*. at 732. In finding that the defective "product" the Library purchased was not the component product or services purchased from the subcontractors, but rather the library facility itself, the Court found that:

> [T]he Library purchased a complete refurbishing of its library facility from multiple parties. The Library did not purchase a blueprint from the Defendants, concrete from the materials supplier, and inspection services to ensure the safety of the construction project in isolation; it purchased a complete renovation and expansion of all the components of its facility as part of a single, highly-integrated transaction. Thus, irrespective of whether Defendants' negligence was the proximate cause of defects in the design of the library facility, for purposes of the other property rule, the product or service that the Library purchased was the renovated and expanded library facility itself.

*Id*. at 731.

Here, US Steel contracted with Carbonyx to construct the facility and Carbonyx in turn subcontracted with SDC to provide the Dust Collection Equipment. US Steel did not purchase Dust Collection Equipment from SDC in isolation. The Dust Collection Equipment was an integral part of the entire CASP plant project, not independent from it. Therefore, US Steel purchased all of the components for the construction of the CASP Plaint, including the Dust Collection Equipment, as part of a single, highly integrated transaction. These facts are nearly identical to those in *Indianapolis-Marion County Public Library*. Therefore, just as the entire library facility itself was found to be the defective "product" purchased by the Library, the entire CASP plant is also the defective "product" purchased by US Steel.

7

Accordingly, in order to have sufficiently alleged damages to "other property," and thereby avoid the economic loss bar to its counterclaim, US Steel must have plausibly alleged in the pleadings alone, that it suffered damages to property other than the CASP as a whole, and other than related incidental and consequential economic losses.

In order to satisfy the notice-pleading "plausibility" standard under the FRCP:

> [T]he complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged… To meet the plausibility standard, the complaint must supply enough fact to raise a reasonable expectation that discovery will reveal evidence supporting the plaintiff's allegations.

*Independent Trust Corp. v. Stewart Info. Servs. Corp.,* 665 F.3d 930, 934-935 (7th Cir. 2012) (quotations omitted). Moreover, "[w]hile there is no need for detailed factual allegations, the complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests." *Stender v. BAC Home Loans Servicing LP*, No. 2:12 CV 41, 2013 WL 832416, at *1 (N.D. Ind. Mar. 6, 2013) (quotation omitted).

Here, US Steel points to the word "damages" contained in its counterclaim as language that sufficiently alleges damage to "other property." US Steel contends that "damages" is a general term and has not been limited by US Steel to the CASP or the equipment provided by SDC. In support, US Steel points to *City of Whiting, Indiana v. Whitney, Bailey, Cox & Magnani, LLC*, No. 2:14-cv-440-TLS-PRC, 2015 WL 6756857, at *1 (N.D. Ind. Nov. 5, 2015). In *Whiting,* the City entered into a construction contract with a contractor for a development project intended to revitalize a waterfront area of the city. *Id*. at *1. The project called for a park, marina, and engineering steps to protect the shoreline from erosion. The engineering elements included stone revetment, stone breakwater fishing pier, and Boat Launch/Harbor Improvements. *Id*. When the

8

revetment efforts failed, the City sued. *Id*. at *2. In its complaint, the City alleged that it suffered "…extensive damage to the City's property at the Project, *including* the Whiting Park pavilion, gazebo, and fishing pier." *Id*. (emphasis added). The Court found that the word "including" followed by a listing of property, signified a non-exhaustive list, and therefore it was possible that the City had alleged damage to property not mentioned in the list that would qualify as "other property." *Id.* at *8.

Here, US Steel did not allege a non-exhaustive list of damaged property in its counterclaim in the way that the claimant did in *City of Whiting, Ind*. Nor did US Steel allege a list of damaged property accompanied by the word "including." Instead, US Steel only alleged "damages." A mere allegation of "damages," without factual reference to any other property damage beyond the defective product itself (i.e. the CASP plant as a whole), is starkly different from those the Court in *City of Whiting, Ind.* found sufficient. Thus, the present case is readily distinguishable from *City of Whiting, Ind*.

"Damages," without more, provides this Court with no way to identify whether US Steel has suffered damage to other property or not. *See Lagestee-Mulder, Inc., v. Consolidated Ins. Co.,* 682 F.3d 1054, 1059 (7th Cir. 2012) (quoting *Pekin Ins. Co. v. Roszak/ADC, LLC,* 931 N.E.2d 799, 806 (Ill. App. Ct. 2010) ([W]e will not read into the complaint facts that are not there.")). "[W]e are not permitted simply to speculate about possible factual scenarios that are absent from the claim itself." *Amerisure Inc. Co. v. Microplastics, Inc.,* 622 F.3d 806, 814 (7th Cir. 2010).

Indeed, in order to avoid the economic loss bar, US Steel would need to have alleged facts sufficient to support a claim of damages to "other property" beyond the CASP plant as a whole and beyond any incidental or consequential losses sustained as a result of the defect. The mere presence of the word "damages," without more, does not sufficiently allege such supporting facts.

9

*See Lagestee-Mulder,* 682 F.3d at 1059 (despite liberally construing the complaint, general use of the word "damages" in complaint was insufficient allegation as "a theory cannot be supported by the complaint if the complaint does not allege facts to support the elements of that theory").

Therefore, because US Steel has not sufficiently alleged damage to "other property," US Steel's claim is barred by the economic loss rule.

### c. Contractual Privity

Lastly, US Steel argues that since US Steel did not contract directly with SDC, and did not purchase a service or product directly from SDC, the economic loss rule does not bar its counterclaim against SDC on these facts because "no agreement on allocation of loss existed" between US Steel and SDC and US Steel is "not seeking to circumvent contractual limitations." (DE #43 at 7.)

In effect, US Steel is arguing that the economic loss rule does not bar the claim because there is no contractual privity between US Steel and SDC. However, the Indiana Supreme Court has squarely addressed the issue of whether contractual privity is required for the economic loss rule to apply.

In *Indianapolis-Marion County Public Library*, the Court held:

> there is no liability in tort to the owner of a major construction project for pure economic loss caused unintentionally by contractors, subcontractors… or others engaged in the project with whom the project owner, **whether or not technically in privity of contract,** is connected through a network or chain of contracts.

929 N.E.2d at 740 (emphasis added). "[T]he economic loss rule precludes participants in major construction projects connected through a network or chain of contracts from proceeding against each other in tort for purely economic loss." *Id.* at 739.

Here, US Steel contracted for a CASP Plant with Carbonyx, and Carbonyx contracted with SDC to provide Dust Collection Equipment for that project. This owner, contractor, sub-contractor relationship for construction of the CASP plant is precisely the type of network or chain of contracts that was present in *Indianapolis-Marion County Public Library*, where the Court made clear that contractual privity is not required for the economic loss rule to apply under circumstances where, as here, there exists a network or chain of contracts for a major construction project.

In support of its contention, US Steel cites excerpts from economic loss cases, such as *KB Home Indiana Inc. v. Rockville TBD Corp.*, 928 N.E.2d 297 (Ind. Ct. App. 2010), and *Novak v. Indiana Family & Soc. Servs. Admin.*, No. 1:10-CV-0677-RLY-DML, 2011 WL 1224813 (S.D. Ind. Mar. 30, 2011). However, these cases do not involve a construction project connected through "a network or chain of contracts" such as the instant case. Here, *Indianapolis-Marion County* is clear and it is controlling. *See SAMS Hotel Group, LLC v. Environs, Inc.,* 716 F.3d 432 (7th Cir. 2013); *see also JMB Mfg., Inc. v. Child Craft, LLC*, 799 F.3d 780 (7th Cir. 2015). Therefore, the lack of contractual privity between US Steel and SDC does not avoid the economic loss bar to US Steel's counterclaim against SDC.

Thus, because it appears beyond doubt that US Steel cannot prove facts sufficient to support its position, US Steel's counterclaim against SDC is barred by the economic loss rule.

## **CONCLUSION**

For the reasons set forth above, "Plaintiff's Motion for Judgment on the Pleadings with Respect to Counterclaim of United States Steel Corporation," (DE #39) is **GRANTED**. The Clerk is **ORDERED** to **DISMISS** United States Steel Corporation's counterclaim (contained in DE #8 at 16) **WITH PREJUDICE**.

```
DATED: June 21, 2016          /s/ RUDY LOZANO, Judge
                              United States District Court
```